**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-00279 and |
| SPECIALTY HOSPITAL OF ) | 14-00295 through 14-00300 |
| WASHINGTON, LLC, *et al.*, ) | |
| ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered Under |
| ) | Case No. 14-00279 |
| ) | |
| ) | |
| BRIDGEPOINT HEALTHCARE, LLC ) | |
| (f/k/a/ DCA ACQUISITIONS, LLC) ) | |
| ) | |
| Plaintiff, ) | Adv. Proc. No. 15-____ |
| ) | |
| v. ) | |
| ) | |
| CAPITOL HILL GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff BridgePoint Healthcare LLC (formerly known as DCA Acquisitions, LLC) ("**DCA or BridgePoint**" or "**Plaintiff**"), by and through undersigned counsel, in support of this complaint (the "**Complaint**") against Capitol Hill Group, Inc. ("**CHG**" or "**Defendant**"), hereby alleges and states as follows:

**NATURE OF THE CASE**

1.      In this action, Plaintiff seeks declaratory relief and enforcement of the Court's June 30, 2014 order (the "**Sale Order**") authorizing the assumption and assignment of a property lease between Debtor Specialty Hospital of Washington, LLC ("**SHDC**" or "**Debtor**")

and its landlord, CHG.  In that order, the Court expressly found that, after any cure payment was made on behalf of the Debtor, the Purchaser (DCA) "shall have no liability or obligation arising or accruing prior to the Closing, except as otherwise expressly provided in the Asset Purchase Agreement" and that each non-Debtor party to an assigned contract, such as a CHG, "is forever barred, estopped, and permanently enjoined from raising or asserting" such claims against the purchaser, such as DCA.

2.      In direct violation of the Court's Sale Order, CHG has made a demand that DCA pay outstanding water bills incurred during the Debtor's prior tenancy, i.e., prior to the closing of the Asset Purchase Agreement and assumption and assignment of the lease from Debtor to DCA.  In other words, DCA is being asked to pay Debtor's obligations incurred *pre-petition and during the course of its bankruptcy proceedings*, even though DCA clearly never assumed such obligations.  Furthermore, CHG has issued a notice of default under the lease based on DCA's refusal to pay such amounts, which marks the beginning of a process that puts DCA at risk of eviction from a critical healthcare facility.  Thus, DCA seeks enforcement of the Court's Sale Order as well as a declaration that DCA has no liability for the water bills and that CHG's claim for such amounts is barred.

<b><u>JURISDICTION AND VENUE</u></b>

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The claims set forth herein are core matters within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

<b><u>PARTIES</u></b>

4.      Plaintiff is a Delaware limited liability company with principal place of business

2

located at Two Greenwich Place, 1st Floor, Greenwich, Connecticut 06830.  DCA provided

Debtor-In-Possession financing to the Debtor and purchased certain assets from the Debtor's

estate in these proceedings pursuant to Bankruptcy Code §§ 105, 363 and 365, including a lease

of certain property located at 700 Constitution Avenue, N.E., Washington, D.C.

5.      Defendant is a California corporation with principal place of business located at

2052 W. Virginia Ave., N.E. Washington, DC 20002.  CHG is landlord for the premises located

at 700 Constitution Avenue, N.E., Washington, D.C., which was previously leased by the

Debtor.

**BACKGROUND**

6.      Debtors SHDC and related Debtor entities operated two healthcare facilities in

Washington, D.C. under the "Specialty Hospitals of Washington" brand.

7.      One such facility was located at 700 Constitution Avenue, NE, Washington, DC

(the "**Capitol Hill Property**").  The Capitol Hill Property was leased pursuant to an original

lease agreement (the "**Existing Lease**") with Capitol Hill Group, one of SHDC's petitioning

creditors, as landlord.

**A.      Commencement of the Chapter 11 Cases**

8.      In January 2014, the Debtor began formally marketing the sale of their assets and

operations because it was facing substantial liabilities.

9.      On April 23, 2014, certain creditors filed an involuntary petition under chapter 11

of the Bankruptcy Code against SHDC in the United States Bankruptcy Court for the District of

Delaware (the "**Delaware Court**").

10.     On May 9, 2014, the Delaware Court entered an order granting a motion to

change venue filed by the District of Columbia and joined by Debtor SHDC.

11.     On or about May 14, 2014, the involuntary case was opened in this Court and assigned case number 14-00279.

12.     On May 21, 2014, the Debtors, other than SHDC, filed voluntary petitions with this Court under chapter 11 of the Bankruptcy Code.  The Debtors had also negotiated a debtor-in-possession facility ("**DIP facility**") with DCA and continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     On May 21, 2014, the Debtors also filed a motion pursuant to Bankruptcy Code § 363 for entry of orders authorizing and approving the sale of specified debtors' assets free and clear of all liens, claims, encumbrances, and other interests and for the assumption and assignment of certain executory contracts, including the Existing Lease.  Dkt. No. 68.

14.     On June 2, 2014, the Court approved the DIP facility on an interim basis as well as the Debtors' designation of DCA as the stalking horse purchaser.  Dkt. Nos. 162, 169.

**B.     Landlord Sale Support Agreement**

15.     On May 28, 2014, CHG filed a Praecipe providing notice of the Landlord Sale Support Agreement Term Sheet (the "**Sale Support Agreement**") that CHG had entered into with DCA's affiliate, on DCA's behalf.  Dkt. No. 121.

16.     The Sale Support Agreement set forth the applicable "Cure Obligation" payments that SHDC agreed to make to CHG if the Court approved DCA's purchase of certain of Debtor's assets and contracts, including its lease of the Capitol Hill Property.  Dkt. No. 121-2 at ¶ 13.

C.      **Asset Purchase Agreement**

17.     On June 20, 2014, SHDC filed notice of the proposed form of Asset Purchase

Agreement (the "**APA**") with DCA.  Dkt. No. 267.  The APA includes in Section 8.1 on

"Conditions to Buyer's Obligations" the following terms:

> (m)  The landlord under the Capitol Hill Lease shall be in full compliance with the terms
> of the Sale Support Agreement, including having addressed any deficiencies with respect
> to the Lease Real Property which have resulted in, or are reasonably likely to result in, a
> material adverse change in the conditions, liabilities, or operations of the Leased Real
> Property.
>
> (n)  The Capitol Hill Lease shall have been entered into between Buyer and the
> applicable landlord, to be effective as of the Closing.

The APA defines "Capitol Hill Lease" to mean "the amended and restated lease agreement

between the Buyer and the landlord for the Leased Real Property . . . ."  Leased Real Property is

defined under Schedule 4.18(b) as the "Lease Agreement by and between Capitol Hill Group and

Specialty Hospital of Washington, LLC . . . for premises located at 700 Constitution Avenue,

NE, Washington, DC dated December 2004 (with all amendments thereto)."

18.     Section 1.4 of the APA on "Excluded Liabilities" further states that "Buyer does

not assume and will not be liable for any of the direct or indirect debts, Claims, Interests,

Encumbrances, obligations or liabilities of Seller . . . whenever arising and of whatever type or

nature.  In particular, but without limiting the foregoing, Buyer will not assume, and will not be

deemed by anything contained in this Agreement (other than to the extent expressly provided in

Section 1.3 above) to have assumed and will not be liable for any debts, obligations or liabilities

of Seller . . . *whether known or unknown, contingent, absolute or otherwise* . . . ." (emphasis

added).  Section 1.3 on Assumed Liabilities relates only to obligations arising from events

"occurring on or after the Closing Date" for certain contracts designated in schedules which do

5

not include the leases at issue.

19.     Section 2.2 further provided:  "All business expenses incurred by Seller in the ordinary course with respect to the Business, such as utilities, will be pro-rated as of the Closing Date, such that Buyer is responsible for amounts incurred with respect to periods after the Closing Date and Seller is responsible for amounts incurred with respect to periods on or prior to the Closing Date."

20.     The Debtors and DCA entered into the final Asset Purchase Agreement on October 9, 2014.

**D.      The Court's Sale Order**

21.     On June 30, 2014, after a hearing before the Court on June 25, 2014, the Court entered its Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Certain Related Relief (the "**Sale Order**").  Dkt. No. 335.

22.     Paragraph M of the Sale Order states that the Purchaser (DCA) "is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law."  Paragraph N further states that "[t]he Debtors may sell the Acquired Assets free and clear of all obligations, liabilities, interests . . . ."

23.     Paragraph 30 of the Sale Order states that "[a]ll defaults or other obligations of the Debtors under the Designated Contracts arising or accruing prior to the date of this Order . . . shall be cured by the Purchaser at the Closing or as soon thereafter as reasonably practicable, and

6

the Purchaser *shall have no liability or obligation arising or accruing prior to the Closing*, except as otherwise expressly provided in the Asset Purchase Agreement." (emphasis added).

24. Paragraph 32 of the Sale Order recognizes the DCA and CHG entered into the Sale Support Agreement and that the Debtors, DCA and CHG agreed that "(a) the Existing Lease shall be deemed amended and restated in full by the New Lease, (b) the Existing Lease as amended and restated in full by the New Lease shall be deemed assumed by SHDC and assigned to Purchaser pursuant to sections 365(b) and 365(f) of the Bankruptcy Code and (c) all prerequisites to assumption under section 365(b) of the Bankruptcy Code, including without limitation all cure obligations and adequate assurance of future performance requirements, and section 365(f) of the Bankruptcy Code shall be deemed fully and completely satisfied."

25. Paragraph 33 of the Sale Order further states: "[o]nly on and after Closing, and only upon payment of any required cure, each non-Debtor party to an Assigned Contract hereby is forever barred, estopped and permanently enjoined from raising or asserting against the Debtors or the Purchase [DCA], or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Designated Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Designated Contracts."

26. Paragraph 53 of the Sale Order states "[t]his Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements

executed in connection[] therewith in all respects, including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against (i) any claims of successor or vicarious liability related to the Acquired Assets or Designated Contracts . . . ."

27.     CHG, among others, signed and certified it had "Seen" and had "No Objection" to the Sale Order, which is now final.

### E.     Amended and Restated Lease Agreement

28.     On December 16, 2014, CHG and DCA's affiliated entities (the "**DCA Affiliates**") entered into the Amended and Restated Lease Agreement for the Capitol Hill Property (the "New Lease").

29.     Section 2.1 of the New Lease states that "[t]he term of this Lease (the "Term" or "Lease Term") shall commence on the Lease Commencement Date . . . ."  Section 2.2 defined "Lease Commencement Date" as "the date of the closing of Tenant's acquisition of assets from the estate of the Bankruptcy Case in accordance with the terms and conditions of that certain Asset Purchase Agreement, dated October 9, 2014, between DCA Acquisitions, LLC, a Delaware limited liability company, and Specialty Hospitals of America, LLC . . . ."

30.     Section 4.1 of the New Lease states that "Tenant shall be responsible for the Operating Expenses . . . that *accrue during the Term of this Lease*." (emphasis added).

31.     DCA also paid $2,000,000 on behalf of SHDC as a part of the "Cure Obligation" for the New Lease pursuant to the Sale Support Agreement, and is obligated to pay between 2016 and 2018 an additional $2.5 million denominated as "additional rent" further to cure SHDC

liabilities.

32.     On December 18, 2014, the parties closed on the sale pursuant to the APA and the Court's Sale Order (the "Closing").

33.     Under the New Lease, DCA leases only District of Columbia Assessment and Taxation Lot 843 ("**Lot 843**").  DCA does not lease or occupy District of Columbia Assessment and Taxation Lot 844 ("**Lot 844**") from CHG, although the Debtor historically had leased and occupied both Lots 843 and 844 pursuant to the prior lease.

**F.     Post-Closing Claims by CHG**

34.     On March 5, 2015, CHG sent the DCA Affiliates a "notification of certain water bill and utility transfer obligations under the Lease" (the "First Notice").  CHG asserted that DCA's acceptance of the assignment of the Existing Lease between CHG and SHDC "imposes on Tenant numerous ongoing and continuing obligations, including paying all utilities and *indemnifying Landlord for any expenses incurred as a result of SHA's use of the property*." (emphasis added).

35.     In particular, the First Notice sought over $200,000 for water bills incurred by the Debtor for use prior to the Closing – indeed for a period extending all the way back to 2011. Remarkably, CHG's demand sought payment for water consumed at Lots 843 and 844, even though DCA has never occupied or leased Lot 844.

36.     DCA directed CHG to this Court's Sale Order, but CHG refused to withdraw its demand and has now sent a notice of default to DCA pursuant to the New Lease dated May 22, 2015 (the "Notice of Default").

9

## CLAIMS FOR RELIEF

### COUNT I
### (Declaratory Judgment)

37. Plaintiff incorporates by reference all of the allegations set forth in Paragraphs 1 through 36 as if fully set forth herein.

38. Defendant has asserted a right to and made demands from Plaintiff for expenses incurred by Debtor SHDC prior to Closing under the Existing Lease.

39. Pursuant to well-established bankruptcy law and the terms of the Order, this Court's Sale Order extinguished any liabilities accruing prior to the Closing of the sale of Debtors' assets and contracts, including the lease as amended and restated, and barred any such claims by CHG.

40. An actual controversy exists between Plaintiff and Defendant. Although Plaintiff denies Defendant is entitled to any such expenses, Defendant is presenting a claim for expenses incurred as a result of Debtor SHDC's pre-Closing use of the property and has issued a notice of default, claiming Plaintiff is in breach of the New Lease that DCA rightfully acquired without any such liabilities. In order to facilitate the administration of the estate, it is important for the Court to resolve this dispute between the parties regarding the sale of the Debtors' assets.

41. Accordingly, Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9), that the Defendant is not entitled to any expenses incurred as a result of SHDC's prior use of the property subject to the New Lease and any claim by CHG for such expenses is barred.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests entry of a judgment in its favor that:

(a) the Defendant is not entitled to any expenses incurred as a result of SHDC's prior use of the property subject to the New Lease;

(b) the Defendant is barred from raising or asserting a claim for expenses incurred as a result of SHDC's prior use of the property subject to the New Lease, including its demand for outstanding water bills; and

(c) granting such other and further relief as is just and proper.


Dated:  May 27, 2015                          Respectfully submitted,

/s/ Michael J. Edney_____
Michael J. Edney (DC Bar No. 492024)
Filiberto Agusti (DC Bar No. 270058)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Ave., NW
Washington, DC 20036
Tel: (202) 429-3000
Fax: (202 429-3902
Email: medney@steptoe.com
Email: fagusti@steptoe.com

*Counsel for Plaintiff BridgePoint Healthcare LLC,*
*f/k/a DCA Acquisitions LLC*